IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| UNITED STATES OF AMERICA, Plaintiff, vs. RONALD JOSEPH MOCKELMAN, Defendant. | **CASE NO: 4:18CR3163** **DETENTION ORDER** |

The defendant is charged with assaulting and attempting to assault a United States Deputy Marshal, a federal law enforcement officer, with physical contact in an intent to impede, intimidate, and interfere with the deputy marshal while he was engaged in his official duties. (Filing No. 1). On the government's motion, the court held a detention hearing under the Bail Reform Act, 18 U.S.C. § 3142(f). The court concludes the defendant must be detained pending trial.

ANALYSIS

Under the Bail Reform Act of 1984, 18 U.S.C. §3142, if a judicial officer finds by clear and convincing evidence that "no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community, such judicial officer shall order the detention of the [defendant] before trial." 18 U.S.C. § 3142(e). Thus, even absent a flight risk, danger to the community alone is a sufficient reason to order pretrial detention. United States v. Salerno, 481 U.S. 739, 755 (1987); see also, United States v. Sazenski, 806 F.2d 846, 848 (8th Cir. 1986). Where the judicial officer's justification for detention is premised upon the safety of the community, the decision must be supported by "clear and convincing evidence." 18 U.S.C. § 3142(f). Where the justification for detention is the judicial officer's finding that no set of conditions will assure the defendant's appearance in court, such a decision must be supported

by a preponderance of the evidence. United States v. Kisling, 334 F.3d 734, 735 (8th Cir. 2003).

Defendant has a history of assaultive behavior (third degree assault in 1996 and 2005), and threatening harm to others (terroristic threats in 2010 and attempting to influence a federal official by threat in 2015). The 2015 case, U.S. v. Mockelman, 4:15-cr-03023-RGK-CRZ, was also filed in the United States District Court for the District of Nebraska, and it presents a long history for the court's consideration on the government's motion to detain. Both parties asked the undersigned magistrate judge to consider the record in the 2015 criminal litigation, for the purposes of determining the issue of detention on the above-captioned criminal case.

Defendant pleaded guilty in the 2015 case. During his change of plea hearing, Defendant admitted that after becoming angry with the Department of Transportation in early 2015, he placed two phone calls to that agency's Chicago call center, threatening "I might drive back to Chicago and kill you all," and "Every last one of you is dead. It's war." He also placed a call to the DOT office in Lincoln, Nebraska, threatening "I'm buying a gun and it's war. Every[one] in the country that wears a badge is . . . dead. . . . You all need to . . . die." (4:15-cr-03023-RGK-CRZ, (Filing No. 28, at CM/ECF p. 13). Defendant was sentenced to nine months in prison followed by a one-year term of supervised release. (4:15-cr-03023-RGK-CRZ, (Filing No. 43). Defendant was afforded 60 days to self-surrender, but that self-surrender deadline was cut short when he threatened to use automatic weapons to kill employees of Stevens Transport Company and the FBI. (4:15-cr-03023-RGK-CRZ, (Filing No. 45).

After his release from prison, and while on supervision, Defendant was stopped for a traffic violation in Massachusetts. He made four threatening phone calls to the Uxbridge District Courthouse in Massachusetts, commenting "lazy

Trooper was lucky that I didn't have a gun on me then" and he then threatened to beat police with a baseball bat and/or shoot them with a gun. (4:15-cr-03023-RGK-CRZ, Filing Nos. 50 & 80). On September 25, 2017, Defendant was sentenced to time served followed by supervised release for a term of 10 months. (4:15-cr-03023-RGK-CRZ, Filing Nos. 80 & 82).

Defendant also violated this term of supervised release. A petition alleging supervised released violations was filed on December 8, 2017, alleging Defendant called the Environmental Services department of Douglas County, Nebraska and threatened to "blow up" that county over a zoning question. (4:15-cr-03023-RGK-CRZ, Filing No. 85). The arrest warrant on the December 8, 2017 petition was executed on December 13, 2017. (4:15-cr-03023-RGK-CRZ, Filing No. 91).[1]

During the initial appearance and detention hearing held on the December 8, 2017 petition, the undersigned magistrate judge received audio recordings of voice mails Defendant had recently left with his supervising officer. (4:15-cr-03023-RGK-CRZ, Filing Nos. 104, 105, & 106). These recordings were highly racist, sexist, and anti-government, with Defendant stating three Douglas County officers who contacted Defendant in response to a complaint should have been "shot and executed on the spot." (4:15-cr-03023-RGK-CRZ, Filing No. 105). Acting through his counsel, Defendant requested a psychological evaluation by the Bureau of Prisons (BOP). (4:15-cr-03023-RGK-CRZ, Filing No. 101). That motion was granted.

The court received the report on the psychological evaluation on March 12, 2018. The evaluator concluded Mockelman has Intermittent Explosive Disorder, which "manifests as discrete episodes of losing control of aggressive impulses,

---

[1] It appears the indictment for the above-captioned case is based on Defendant's conduct during that arrest or post-arrest detention; that is, the new indictment alleges Defendant assaulted or attempted to assault a deputy marshal on December 13, 2017. (Filing No. 1).

which can result in serious assault or the destruction of property, but can also be limited to significant verbal outbursts." (4:15-cr-03023-RGK-CRZ, [Filing No. 108, at CM/ECF p. 15](#)). The evaluator explained that while Mockelman poses "a relatively low probability of actual violence," "[t]his does not mean threats made by Mr. Mockelman should not be taken seriously . . . ." (4:15-cr-03023-RGK-CRZ, [Filing No. 108, at CM/ECF pp. 27-28](#)). He tends to "ruminate on . . . issues until his discomfort escalates to the point he engages in aggressive outbursts, recently verbal but also physical in the past." (4:15-cr-03023-RGK-CRZ, [Filing No. 108, at CM/ECF p. 26](#)).

The sentencing hearing on the December 8, 2017 petition was held on May 24, 2018. The evening before, Defendant left a message with his supervising officer stating he would not be present at sentencing, and if the marshals attempted to arrest him, he would resist arrest and they would have to "put a bullet through" his head. (4:15-cr-03023-RGK-CRZ, [Filing No. 116](#), audio file, 00:40-3:50). During the hearing, Judge Kopf expressed his concerns that Defendant's behaviors were, in fact, escalating.

> Mr. Mockelman presents, in an odd sort of way, in that he is older, and while these explosive disorders tend to begin sometimes in older people, they also begin to wane, and it's not waning. And the psychologist said you cannot be sure that the actions of someone like Mr. Mockelman will not be -- or rather the -- I'll call them rants by Mr. Mockelman -- will not be followed by action. What is particularly concerning to me is this telephone call to the Probation Office yesterday. In that, Mr. Mockelman said -- and I'm paraphrasing -- "If the marshals come for me with some machine guns," I think he said, "they'll have to put a bullet through my head." That is an elevation. That sort of talk is, number one, extremely concerning. And if I remember correctly, the nature of it is, in a sense, more extreme than we've heard before. So the limited amount of time that I can incapacitate him is uppermost in my mind because I don't want to see him commit death-by-cop, which is an effect if he's not careful with people -- with law enforcement people.

(4:15-cr-03023-RGK-CRZ, Filing No. 134, at CM/ECF p. 13-14). Judge Kopf concluded, "Mr. Mockelman, I think you're a threat to yourself." (4:15-cr-03023-RGK-CRZ, Filing No. 134, at CM/ECF p. 17). Defendant was sentenced to 12 months in prison, with credit for time served while detained pending sentencing. (4:15-cr-03023-RGK-CRZ, Filing No. 120). That sentence expires on December 12, 2018. At the time of his arrest in this case, Defendant was living at a halfway house in Omaha, Nebraska, with the BOP permitting Defendant to leave the facility as needed. Defendant had applied for jobs, and he was offered employment, but he was not able to begin because he was arrested on the above-captioned case.

Against this backdrop, Defendant opposes the government's motion for detention, arguing he is neither a flight risk nor a danger to the community. Defense counsel argued the BOP psychological evaluation on March 12, 2018 stated that despite Defendant's outbursts and threats, he poses no danger to the community. (Filing No. 12, audio file, 9:45-12:10). Defense counsel argues the public's perception of whether Defendant's threats pose a danger is not a relevant consideration; that the undersigned magistrate judge must decide if he is actually a danger to the public.

There are several problems with Defendant's argument. The record establishes that Defendant has a pattern of threatening to kill government employees, and this conduct is perhaps escalating despite anger management classes, punitive incarceration, psychological treatment and medication, and ongoing court supervision. Based on the indictment allegations in this case, there is probable cause to believe Defendant has and will assault law enforcement officers, even if they are armed. If released, Defendant's threats, often racially charged, pose the very foreseeable risk that not only law enforcement, but also members of the public, will respond with force—to avoid the harm Defendant threatens and without knowing those threats may be idle. People will get hurt and perhaps killed—including the defendant. And even if no one is physically harmed

by Defendant, the court will not ignore the mental harm caused by Defendant's murder threats. Finally, law enforcement resources are stretched, and diverting those resources to deal with Defendant's behavior poses the risk that others will not receive the help they need. See, e.g., United States v. Cherry, 221 F.Supp.3d 26 (2016).

Based on all the information of record and the evidence presented, the court finds, by clear and convincing evidence, that Defendant poses a serious risk of harm to others—and to himself—if he is released. The court further finds that no conditions or combination of conditions of release will sufficiently ameliorate that risk. Defendant's record establishes that he is not amenable to supervision. He has repeatedly violated court-ordered conditions, and he does not respect the authority of the court. He clearly does not respect the court's supervisory personnel, as proven by the recurrent threatening and racially charged voice mails he has left on his supervising officer's phone. A defendant who cannot be supervised cannot be released.

The court finds that conditions which restrict Defendant's travel, personal contacts, and possession of drugs, alcohol, and/or firearms; require reporting, education, employment, or treatment; or monitor Defendant's movements or conduct; or any combination of these conditions or others currently proposed or available (see 18 U.S.C. § 3142(c)), will not sufficiently ameliorate the risks posed if the defendant is released.

## Directions Regarding Detention

The defendant is committed to the custody of the Attorney General or a designated representative for confinement in a corrections facility separate, to the extent practicable, from persons awaiting or serving sentences or held in custody pending appeal. The defendant must be afforded a reasonable opportunity to consult privately with defense counsel. On order of the United States Court or on

request of an attorney for the Government, the person in charge of the corrections facility must deliver the defendant to the United States marshal for a court appearance.

Dated November 27, 2018.

BY THE COURT:

*s/ Cheryl R. Zwart*
United States Magistrate Judge